## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PAULETTE THOMPSON | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **CIVIL ACTION FILE** |
| CITY OF JOHNS CREEK, GEORGIA | ) | NO. 1:20-cv-4344 |
| and CHRISTOPHER BYERS, in his | ) | |
| individual capacity | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' JOINT MOTION TO DISMISS
### AND MEMORANDUM OF LAW IN SUPPORT

Defendants City of Johns Creek, Georgia ("City") and Christopher Byers ("Byers") jointly move to dismiss the Complaint and all claims against them for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's Complaint consists almost entirely of legal conclusions without factual allegations supporting her requested relief.

### I.      SUMMARY OF ALLEGATIONS

**A.      The City still employs Plaintiff in the Police Department.**

Plaintiff is a current employee who has "worked for the City of Johns Creek Police Department since 2008." (Doc. 1, ¶ 6.) During this time, Plaintiff "served as Records Clerk and Administrative Assistant." (Id. ¶ 7.) The Complaint contains no

allegations of any adverse action against Plaintiff.

**B.   Plaintiff claims Byers made sexually suggestive comments to her before his promotion to Chief of Police.**

Plaintiff's case centers on alleged sexual comments made by Byers and directed at Plaintiff. Byers previously "occupied the roles of Lieutenant, Captain, Major," (<u>Id.</u> ¶ 7), and most recently served as "Chief of Police from March 2020 through August 11, 2020," (<u>Id</u>). Although Plaintiff claims that "[a]t all times relevant to this dispute, [Byers] was the Chief of Police for the City,"(<u>Id.</u> p. 2), this is incorrect and contradicted by her own allegation that the alleged harassment from Byers occurred "[f]rom 2016 to December 2019," (<u>Id.</u> ¶ 8), before his promotion to Chief of Police.

Plaintiff states, "Byers engaged in unwelcome sexually harassing comments towards [her] on a frequent basis." (<u>Id.</u>) To support this allegation, Plaintiff identifies these comments:

- Byers said, "'I'm laying on Todd's couch waiting on you.' As he laid there, Byers would have on gym shorts with his legs spread open." (<u>Id.</u> ¶ 11.)

- "As Byers would leave to work out, he would say, 'I'm going to the locker room, come with me and help me change.'" (<u>Id.</u> ¶ 12.)

- "When returning from working out [Byers] would say 'I've been waiting on you, but you never showed up.'" (<u>Id.</u> ¶ 12.)

- Byers would say, "Paulette, I'm going to my office, go wait under my desk for me." (Id. ¶ 13.)

- "[Byers] would also tell Plaintiff how his penis would not work, Specifically, he described how he could get an erection, but could not ejaculate." (Id. ¶ 14.)

- Byers' "last comment … in December 2019 was 'this dick ain't gonna suck itself.'" (Id. ¶ 15.)

Plaintiff also claims, "[a]nother member of the command staff showed [Plaintiff] pictures of his naked mistress from April 2016 to March 2017," (Id. ¶ 9), but she does not identify that person or even allege she ever reported the alleged conduct to anyone in the City.

## C.   No Evidence the City was on Notice of Alleged Conduct

Plaintiff admits the City investigated her complaint about Byers's alleged conduct, stating that, in June 2020, the City "interviewed [Plaintiff] pursuant to [its] investigation into Byers's sexually harassing behavior." (Id. ¶ 10.) Plaintiff "answered the investigator's questions and admitted that Byers made the disgusting, sexually harassing comment to her in December 2019." (Id.) Plaintiff "also informed the investigator that Byers's sexually harassing comments occurred frequently between April 2016 and December 2019." (Id.) Plaintiff then alleges (falsely) that Byers "[resigned] from his position as Chief of Police based upon his misconduct towards [Plaintiff]" in August 2020. (Id. ¶16.)

Plaintiff alleges no other facts about the City's investigation or resolution of her workplace complaint, and no other allegations of any alleged similar conduct by Byers. All the same, without factual support, Plaintiff baldly alleges that "*Upon information and belief*, the City was on notice that Byers had engaged in sexually harassing behavior in the workplace." (Id. ¶ 17.) Similarly, without supporting factual allegations of any kind, Plaintiff alleges the legal conclusion that the "highest City official(s) with responsibility to protect Plaintiff against sexual harassment had actual or constructive knowledge of Byers's illegal actions giving rise to this Complaint." (Id. ¶ 20.)

**D.    Plaintiff's Claims and Deficient Ante Litem Notice**

Based solely on these threadbare allegations, Plaintiff asserts these claims against the City and Byers in her Complaint:

- Count I: Sexual Harassment/Gender Discrimination (42 U.S.C. § 1983 Against Defendant City and Defendant Byers)

- Count II: Assault (Against Defendant Byers)

- Count III: Negligent Hiring, Retention, and Supervision (Against Defendant City)

- Count IV: Punitive Damages O.C.G.A. § 51-12-5.1 (Against Defendant Byers)

- Count V: Attorneys' Fees and Expenses of Litigation O.C.G.A. § 13-6-11 (Against All Defendants).

Plaintiff does not allege that she provided the City with an ante-litem notice, a requirement for her state law claims against the City. Yet even if she had, Plaintiff's attempted notice of her claims on August 27, 2020 only stated that she "suffered substantial damages because of the actions of the Defendants estimated to be at least $650,000." (Exhibit 1.)[1]

## II.     ARGUMENT AND AUTHORITY

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Under that standard, Plaintiff's factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, the factual allegations should "raise a reasonable expectation that discovery will reveal evidence of" Plaintiff's claims. Id. at 556. Plaintiff's Complaint fails to meet this standard.

---

[1] The Court may "consider extrinsic evidence in ruling on a motion to dismiss if it is (1) central to the Plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002). Plaintiff's notice is a prerequisite to suit and signed by her legal counsel. Thus, the Court may review Plaintiff's notice as it considers this Motion to Dismiss.

**A.**   **Plaintiff's Fails to State a Claim Under 42 U.S.C. § 1983.**

   **1.**   **The Complaint contains no facts supporting _Monell_ liability against the City.**

   Plaintiff fails to state a claim against the City under § 1983 because she does not allege any facts identifying either an official City policy or an unofficial custom or policy that caused a violation of her constitutional rights.

   To impose liability § 1983 liability on the City, Plaintiff must show: "(1) that her constitutional rights were violated; (2) that the City had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (_citing_ City of Canton v. Harris, 489 U.S. 378, 388 (1989)). On the second element, Plaintiff bears the burden of identifying "(1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through repeated acts of a final policymaker of the [City]." Grech v. Clayton Cty., 335 F.3d 1326, 1329-30 (11th Cir. 2003) (_citing_ Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Plaintiff does not satisfy either standard.

   First, Plaintiff does not identify a single official City policy constituting deliberate indifference to a constitutional right. At best, Plaintiff claims the City investigated Byers's alleged conduct and allowed him to resign. (Doc. 1 ¶ 16.) But Plaintiff fails to allege any facts linking Byers's alleged conduct with an official City

policy. (Id.) Because Plaintiff's Complaint lacks any such allegations, she cannot establish Monell liability. While the Court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Second, Plaintiff's Complaint lacks any allegations about an unofficial City custom or practice creating Monell liability. To meet this burden of showing a custom or policy, Plaintiff must allege "a series of incidents of unconstitutional conduct suggesting the existence of a widespread practice that . . . constitutes a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Plaintiff identifies no instances of past conduct like the conduct she now alleges Byers directed towards her. Rather, Plaintiff skips over this requirement and relies only on a threadbare legal conclusion that the City "had actual or constructive knowledge of Byers' illegal actions … [and] failed to take reasonable, prompt, remedial action as required by the City anti-harassment policies." (20-21.) But because Plaintiff does not even allege a single fact in support of this allegation or otherwise identify an unofficial City policy or custom, she fails to state a plausible claim of Monell liability through this alternative theory.

Finally, the Court should not consider Plaintiff's conclusory statement that that "*Upon information and belief*, the City was on notice that Byers had engaged in

sexually harassing behavior in the workplace." (Id. ¶ 17.) "[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'" Smith v. City of Sumiton, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) quoting Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Plaintiff's empty and conclusory statements do not satisfy basic plausibility standards and they cannot serve as the basis of alleging Monell liability.

### 2.   **Plaintiff flunks the severe or pervasive standard.**

Even accepted as true, Plaintiff's allegations also fail to state a claim for sexual harassment under § 1983 against the City or Byers because the alleged conduct does not rise to the severe or pervasive level of conduct required by the Eleventh Circuit for a hostile work environment.

The Eleventh Circuit has "repeatedly recognized [that] 'Title VII is not a general civility code and that 'sexual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment.'" Howard v. City of Robertsdale, 168 F. App'x 883, 889 (11th Cir. 2006) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). To rise to the level of discrimination, "the employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and

this subjective perception must be objectively reasonable." Id. The objective component of this analysis considers four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

Under this standard, the Eleventh Circuit has held that "mere 'sex talk,' without more, does not rise to the level of objectively severe and pervasive harassment." Howard, 168 F. App'x at 889-90. In Howard, a chief of police allegedly made "sexual jokes and comments in front of other employees on a regular basis." Id. at 885. This included comments that he was going home for a "nooner" and offensive comments to "female employees about their bodies and sex lives." Id. But the Eleventh Circuit held that such conduct by the police chief, even though allegedly "open and notorious," was not "objectively severe and pervasive harassment" and was "not discrimination in the first place." Id. at 889-90.

Plaintiff's allegations are like those in Howard, in that they amount to "mere sex talk." Even if accepted as true, Plaintiff only alleges Byers made sexual jokes and innuendo that, while crude or inappropriate to some, simply do not rise to the level of "severe or pervasive" harassment that is actionable under Eleventh Circuit precedent. See also Walsh v. City of Ocala, No. 5:18-cv-402-Oc-30PRL, 2019 U.S.

Dist. LEXIS 122484, at *14 (M.D. Fla. June 17, 2019) (chief of police's conduct, including "loud vulgar references to anal sex and the breasts of the female officers," wrestling with a female officer to see nude photos of her on a cell phone, and pushing a female officer's head "simulating her performing an oral sex act," although it could be described as "boorish, crass, and juvenile," was "not the kind of 'severe' sexual harassment that the Eleventh Circuit has found actionable.")

Indeed, Plaintiff's allegations fall well below the severe or pervasive standard established in other Eleventh Circuit cases. See, e.g., Guthrie v. Waffle House, Inc., 460 F. App'x 803, 807 (11th Cir. 2012) (employee grabbing plaintiff's butt two to five times; "talk[ing] dirty" to her, saying he would perform sexual acts on her, and saying he wanted to "fuck her and lick her all over," was not enough to support claims); Leeth v. Tyson Foods, Inc., 449 F. App'x 849, 853 (11th Cir. 2011) (conduct insufficient where manager tried to pull plaintiff onto his lap, made comments that he wanted to "ram his tongue down her throat," dropped by her house uninvited, and called her many times and asked her to go out with him or meet him at hotel); Lockett v. Choice Hotels Intl, Inc., 315 F. App'x 862, 863 (11th Cir. 2009) (per curiam) (no hostile work environment claim existed despite evidence of employee talking about sexual positions, telling plaintiff he would perform sexual acts on her, saying that her boyfriend "ain't F'ing [her] right," and that she needed "to get with a real guy,"

as well as touching plaintiff's butt). <u>Compare</u> <u>with</u> <u>Hulsey v. Pride Restaurants, LLC</u>, 367 F.3d 1238, 1248 (11th Cir. 2004) (conduct sufficiently severe or pervasive where plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her.").

Based on the lack of factual support meeting the severe or pervasive standard, Plaintiff's § 1983 claims fail against both the City and Byers.

### 3.   <u>Qualified Immunity Bars Plaintiff's Individual Capacity Claim Against Byers.</u>

In addition, the Court should find qualified immunity shields Byers from individual liability on Plaintiff's § 1983 claim. Qualified immunity protects government officials from civil liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lassiter v. Alabama A & M Univ.</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)); <u>Jordan v. Doe</u>, 38 F.3d 1559, 1565 (11th Cir. 1994).

As the Supreme Court explained, "permitting damages suits against government officials can entail substantial social costs, including the risk that fear

of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Because of this important interest, "the protection of qualified immunity extends to all but the plainly incompetent or those who knowingly violate the law." <u>Jordan</u>, 38 F.3d at 1565 (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). Optimally, the Court should decide Byers enjoys qualified immunity as early as possible because of the policy reasons behind qualified immunity. Qualified immunity is "an immunity from trial, not just from liability." <u>Post v. Fort Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993), *modified on other grounds*, 14 F.3d 583 (11th Cir. 1994).

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2001). Byers acted within the scope of his discretionary duties in his interactions with Plaintiff and, as such, qualified immunity is implicated. <u>Bates v. Harvey</u>, 518 F.3d 1233, 1242 (11th Cir. 2008). Once it is established that Byers was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity should not apply." <u>Lewis, v. City of W. Palm Beach</u>, 561 F.3d 1288, 1291 (11th Cir. 2009).

To discharge this burden, Plaintiff must satisfy two prongs. First, she "must

show that a constitutional or statutory right has been violated." <u>Fennell v. Gilstrap</u>, 559 F.3d 1212, 1216 (11th Cir. 2009). Second, she "must show that the right violated was clearly established." <u>Id.</u> "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." <u>Avery v. Davis</u>, 700 F. App'x 949, 951–52 (11th Cir. 2017).

### 1. *Byers acted within his discretionary authority.*

When a government official acts within his discretionary authority, he is "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman *ex rel.* Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004). Plaintiff alleges Byers acted in his individual capacity, "using the power and authority of [his] position[] as [a] City official," and "[took] an adverse employment action against a subordinate" (Compl. ¶¶ 22-23), which is within Byers' discretionary authority.

### 2. *<u>Plaintiff's allegations are deficient as a matter of law to establish a constitutional violation.</u>*

Next, the Court should determine whether Plaintiff even alleges a violation of a constitutional right at all. As shown <u>supra</u>, because Plaintiff does not allege a sex-based harassment claim that satisfies basic notice pleading standards, there is no basis for the Court to identify a plausible constitutional violation.

    **3.**    ***Plaintiff cannot clearly establish a violation of her Equal Protection rights.***

Plaintiff also cannot show her Equal Protection rights were "clearly established." For the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Rather than meeting this standard, Plaintiff merely recites a legal conclusion that "it was clearly established law that a supervisor may not take an adverse employment action against a subordinate because she rejects or complains about his sexual advances." (Compl. ¶ 23.) Yet, Plaintiff does not identify a single adverse employment action in her Complaint, let alone an adverse action taken because she rejected or complained about any alleged sexual advance by Byers. Thus, Plaintiff's conclusory allegation fails to state a claim.

In addition, as set forth in the preceding section, the conduct alleged in Plaintiff's Complaint falls well short of the severe or pervasive conduct required to establish a hostile work environment claim under existing Supreme Court and Eleventh Circuit precedent. Therefore, it is not "clearly established" that Byers' alleged conduct, even if it occurred as Plaintiff alleges, constituted an unlawful hostile work environment. Thus, qualified immunity applies to Plaintiff's claim and it should be dismissed.

**B.**     **Plaintiff Fails to State a Claim for Assault Because There Are No Allegations of Byers Attempting to Commit a Violent Injury or Placing Plaintiff in Reasonable Fear of Violent Injury.**

Plaintiff's claim for assault in Count II of the Complaint also is subject to dismissal. Under Georgia law, an assault occurs where "all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." Everett v. Goodloe, 268 Ga. App. 536, 543, 602 S.E.2d 284, 291 (2004); EEEOC v. NuÑez, Inc., No. 1:09-CV-2661-WSD-AJB, 2011 U.S. Dist. LEXIS 159963, at *61-62 (N.D. Ga. Feb. 27, 2011). While an assault does not require actual injury, Plaintiff must "show an intention to commit an injury, coupled with an apparent ability to do so." Scott v. Dismas Charities, Inc., Civil Action No. 1:05-CV-3267-TWT, 2007 U.S. Dist. LEXIS 68883, 2007 WL 2746697, at *24 (N.D. Ga. Sept. 17, 2007).

Plaintiff's Complaint lacks any allegations showing Byers ever tried to commit a violent injury to Plaintiff or engaged in any conduct that placed Plaintiff in a reasonable apprehension of a violent injury from the unlawful act. Lewis-Cummings v. Trucker's Plus Leasing, Inc., No. 1:05-CV-3310-CAP-ECS, 2006 U.S. Dist. LEXIS 103363, at *7-9 (N.D. Ga. July 12, 2006) (granting motion to dismiss where plaintiff accused defendant of boorish sexual conduct, including "turning the satellite radio to the Playboy channel" and threatening "if you go to sleep you're

-15-

gonna wake up moaning" and "don't go to sleep, you're gonna wake up in a hotel room.") While Plaintiff identifies some boorish comments of a sexual nature, she does not claim Byers ever sought to physically subject her to the conduct or that he engaged in any other conduct that would cause her violent injury. Nor does Plaintiff allege that she even reasonably believed Byers placed her in imminent threat of such violent harm. Because her assault claim requires allegations meeting this standard—and Plaintiff does not make any such allegation at all—this Court should dismiss Plaintiff's assault claim.

**C.    Plaintiff Fails to State a Claim for Negligent Hiring, Supervision, and Retention in Count III of the Complaint.**

  **1.    Plaintiff did not provide the required ante litem notice.**

Georgia's ante-litem statute is a "condition precedent to suing a municipality under Georgia law and failure to comply is an absolute bar to a state law claim." Fulton v. City of Roswell, 982 F. Supp. 1472, 1475 (N.D. Ga. 1997); City of Chamblee v. Maxwell, 452 S.E.2d 488, 490 (1994). Plaintiff must show that she presented her negligence claim "in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury."

O.C.G.A. § 36-33-5(b). Unless Plaintiff meets these requirements, "[n]o action shall be entertained by the courts against the [municipality]." O.C.G.A. § 36-33-5(a).

Georgia courts consider this requirement a statute of limitations and, as such, "[t]he time period within which notice must be given begins to run on the day the city's breach of duty allegedly occurred." Nicholas v. Van, 556 S.E.2d 497, 499 (2001); City of Chamblee, 452 S.E.2d at 490 ("if . . . the requisite ante litem notice has not been given within the six-month period, suit cannot thereafter be brought even though the applicable period of limitations has not expired."). Thus, "[n]o person . . . having a claim for money damages against any municipal corporation on account of injuries . . . shall bring any action against [that municipality] for such injuries, without first giving notice." O.C.G.A. § 36-33-5(a). Here, Plaintiff failed to satisfy both the time and substantive requirements of giving ante litem notice.

On timeliness, Plaintiff needed to submit her claim "within six months of the happening of the event upon which a claim against a municipal corporation is predicated." O.C.G.A. § 36-33-5(b). Plaintiff concedes the last event occurred in December 2019. Yet Plaintiff did not try to present notice of her negligence claims to the City until August 27, 2020. (Ex. 1.) Because Plaintiff's notice came well after the six-month limitations period, her claim is untimely and must be dismissed. Id. ("[n]o action shall be entertained by the courts against the municipal corporation

until the cause of action therein has first been presented to the governing authority for adjustment.").

As to substance, Plaintiff's notice also fails because it did not provide a specific amount of damages sought or give the City an option to accept an offer of compromise. In that regard, the ante litem notice must provide a "description of the extent of the injury . . . [and] include the specific amount of monetary damages being sought from the municipal corporation." O.C.G.A. § 36-33-5(e). The statute also requires that "[t]he amount of monetary damages set forth in such claim shall constitute an offer of compromise." Id.

To satisfy this requirement, the ante litem notice must provide a *specific* amount of damages sought and constitute an offer of settlement subject to immediate acceptance by the City; it is not enough to merely provide an estimate of potential damages or an open-ended estimate of potential damages. For example, in a similar case, the Georgia Court of Appeals dismissed the plaintiff's claims because her notice to the city only stated, "[I] believe that the value of this claim may exceed $300,000.00." Pickens v. City of Waco, 352 Ga. App. 37, 41, 833 S.E.2d 713, 718 (2019). Similarly, the Court of Appeals dismissed another plaintiff's claims when her notice to the city only said her "total damages suffered as a result of this incident are likely to exceed $100,000.00." Picklesimer v. City of Eatonton, 356 Ga. App.

504, 505, 847 S.E.2d 863, 864 (2020). As that court explained, such notice "merely provided an estimate of potential damages, and was not the specific amount of monetary damages being sought from the city (i.e., a settlement offer which the city could have accepted) as contemplated by the unambiguous language of OCGA § 36-33-5(e)." Id. (punctuation omitted).

The purported notice from Plaintiff, even if timely, was insufficient for the same reasons as the notices in Pickens and Picklesimer. Plaintiff did not provide a specific amount of damages sought, but merely stated, "[Plaintiff] has suffered substantial damages because of the actions of the Defendants *estimated to be at least $650,000*." (Ex. 1) (emphasis added). Just as the Court of Appeals concluded in Pickens and Picklesimer, this merely provided an estimate of potential damages, but was not a specific amount of monetary damages the City could have accepted as a settlement offer. As a result, Plaintiff cannot bring her claim for negligent hiring, retention, and supervision in Count III of the Complaint, and the claim must be dismissed. See also Manzanares v. City of Brookhaven, 352 Ga. App. 293, 296, 834 S.E.2d 358, 361 (2019) (notice did not meet requirements of statute when it only said, "this claim may exceed $250,000.00.")

**2.    Plaintiff does not plead sufficient facts or identify a viable Georgia tort claim, as required for a claim of negligent hiring, retention, or supervision.**

A claim for negligent hiring, retention, or supervision (collectively, "negligent retention") only arises under Georgia law when an employer negligently hires, retains, or supervises an employee and that employee later harms the plaintiff. See Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001). To establish such a claim, Plaintiff must allege that the employer knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff. Id.; see also Leo v. Waffle House, Inc., 298 Ga. App. 838, 841, 681 S.E.2d 258 (2009); H.J. Russell & Co. v. Jones, 250 Ga. App. 28, 30, 550 S.E.2d 450 (2001).

Plaintiff fails to plead any facts to support a plausible inference that the City knew or should have known of Byers's tendencies to engage in the behavior of which she complains. The Complaint contains *no facts* of alleged prior conduct by Byers or any reason why the City knew or should have known of his propensity to engage in the alleged conduct towards Plaintiff. Instead, Plaintiff only alleges the legal conclusion that "*Upon information and belief*, the City was on notice that Byers had engaged in sexually harassing behavior in the workplace." (Id. ¶ 17.) Indeed, Plaintiff's use of the phrase "upon information and belief" acknowledges that she has no facts to allege and no basis for this legal conclusion, which is not entitled to a presumption of truth and cannot state a claim. See Iqbal, 556 U.S. at 678 ("the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

In addition, to state a claim for negligent retention, Plaintiff must allege a viable, underlying state law tort that sustains the injury against her, because negligent retention is a "derivative" claim that can only survive if the state tort claim survives. See, e.g., MARTA v. Mosley, 280 Ga. App. 486, 489, 634 S.E.2d 466 (2006); Phinazee v. Interstate NationaLease, 237 Ga. App. 39, 41, 514 S.E.2d 843 (1999). In that regard, federal claims will generally not support a claim under Georgia law for negligent retention. See Canty v. Fry's Elecs., Inc., 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) ("There is no distinct tort in Georgia law for harassment, retaliation or discrimination."); Orquiola v. Nat'l City Mortg. Co., 510 F. Supp. 2d 1134, 1140 (N.D. Ga. 2007) ("Georgia courts have described negligent retention as a 'derivative' claim thus requiring an underlying tort of which Plaintiff has none in state law.").

Plaintiff's federal harassment claims under § 1983 thus cannot provide the underlying tort action needed to establish her claim for negligent retention, which means that Plaintiff must rely only on the claim for assault in Count II. Yet, for the reasons discussed above, Plaintiff has not stated and cannot state a claim for assault

against Byers because none of Plaintiff's allegations show any attempt to commit a violent injury against Plaintiff or conduct which reasonably placed Plaintiff in fear of violent injury. Hackett, 238 F. Supp. 2d at 1369. Therefore, Plaintiff's derivative claim for negligent retention in Count III necessarily fails and must be dismissed as well. See Alhallaq v. Radha Soami Trading, LLC, 484 Fed. App'x. 293, 297 (2012) (citing Eckhardt v. Yerkes Reg'l Primate Ctr., 254 Ga. App. 38, 561 S.E.2d 164, 166 (2002)).

Moreover, even if Plaintiff's federal harassment claim under § 1983 could sustain her claim for negligent retention (which it cannot), it too must be dismissed for the reasons discussed above based on her failure to establish the requisite Monell liability and level of conduct needed for an actionable hostile work environment. Thus, her claim for negligent retention in Count III must be dismissed too because it is "necessarily derivative" and can only survive a dispositive motion if the underlying substantive claims survive. MARTA, 280 Ga. App. at 489.

**D. Plaintiff Fails to State a Claim for Punitive Damages and Attorney's Fees Under Georgia Law fail.**

Plaintiff's Complaint also purports to state a claim in Count IV for "an award of punitive damages under the law of Georgia in order to punish" the City and Byers for their alleged actions. In the first place, Georgia's punitive damages statute does not create an independent cause of action. Massey v. Kelly, Inc., 742 F. Supp. 1156,

1158 (N.D. Ga. 1990). For that reason alone, the claim should be dismissed.

Further, because Plaintiff's Complaint fails to state a substantive claim, Plaintiff has no legal right to punitive damages. See J. Andrew Lunsford Props., LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682 (2002). Georgia courts have consistently recognized that a claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach. See, e.g., J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 284 Ga. App. 552, 561, 644 S.E.2d 440, 449 (2007); Nelson & Hill, P.A. v. Wood, 245 Ga. App. 60, 67, 537 S.E.2d 670, 677 (2000) (concluding that summary judgment on the punitive damages claim was appropriate because that claim depended on the merits of the plaintiff's failed breach of fiduciary duty claim). Because Plaintiff's underlying tort claims fail for the reasons herein, her derivative claim for punitive damages necessarily fails as well and  must be dismissed. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304 (11th Cir. 2009) ("where a court has dismissed [the] underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.").

Likewise, Plaintiff's request for attorney's fees and costs in Count V of the Complaint is derivative of her substantive causes of action. Gilmour v. Am. Nat'l Red Cross, 385 F.3d 1318, 1324 (11th Cir. 2004) (explaining that a claim for attorney's fees under O.C.G.A. § 13-6-11 requires a valid underlying claim); see

also Franklin Credit Mgmt Corp. v. Friedenberg, 275 Ga. App. 236, 242, 620 S.E.2d 463, 468 (2005). Yet, even assuming Plaintiff's claim for attorney's fees and costs could somehow survive alone, Plaintiff has provided no facts in support of such a claim. See, e.g., Duncan v. CitiMortgage, Inc., 2014 WL 172228, 2013 U.S. Dist. LEXIS 183623, at *38 (N.D. Ga. Dec. 20, 2013) ("Plaintiffs have failed to plead or demonstrate any facts or scenario that would justify such an award."). Thus, this claim in the Complaint should be dismissed as well.

## III.    CONCLUSION

For each of the foregoing reasons, the Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and grant such other and further relief to Defendants that it finds necessary and proper.

**FREEMAN MATHIS & GARY, LLP**

*s/ David A. Cole*
David A. Cole
Georgia Bar No. 142383
Timothy M. Boughey
Georgia Bar No. 832112
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Attorneys for Defendant City of Johns Creek*

**GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, LLP**

*s/ Harvey S. Gray*
Harvey S. Gray
Georgia Bar No. 305838
Alex Joseph
Georgia Bar No. 590921
950 East Paces Ferry Road, NE
Suite 1700 – Salesforce Tower Atlanta
Atlanta, GA  30326
T: (404) 870-7376
F: (404) 870-7374

*Attorney for Defendant Chris Byers*

## CERTIFICATE OF COMPLIANCE

Under L.R. 7.1(D), the undersigned hereby certifies that the foregoing DEFENDANTS' JOINT MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

*s/ David A. Cole*
David A. Cole
Georgia Bar No. 142383
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-1287
F: (770) 937-9960